JUDGE DANIELS

10 CIV 6488

William B. Wachtel
Julian D. Schreibman
WACHTEL & MASYR, LLP
1 Dag Hammarskjold Plaza
885 Second Avenue
New York, New York 10017
Tel: (212) 909-9500
Fax: (212) 909-9417

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| BLT RESTAURANT GROUP LLC, f/k/a BLT MANAGEMENT LLC, | ) ) ) ) | |
| Plaintiff, | ) ) | COMPLAINT |
| v. | ) ) ) | Civ. Action No. |
| LAURENT TOURONDEL, MICHAEL CINQUE and LT BURGER, INC., | ) ) ) | |
| Defendants. | ) ) ) | JURY TRIAL DEMANDED |

RECEIVED
AUG 31 2010
U.S.D.C. S.D. N.Y.
CASHIERS

        Plaintiff BLT Restaurant Group LLC ("BLT Restaurant"), by and through its undersigned

counsel, for its complaint against defendants Laurent Tourondel ("Tourondel"), Michael Cinque

("Cinque") and LT Burger, Inc. ("LTB"), states and alleges as follows:

### NATURE OF THE ACTION

        1.        This is an action for breach of contract, trademark infringement and deceptive

business practices. Tourondel has misappropriated, for his own benefit, plaintiff's confidential

and proprietary information. Together, the defendants have infringed plaintiff's trademarked

menu and deceived the public by opening a restaurant that mimics plaintiff's well-known line of

restaurants and that they are passing off as offering the same quality dining experience as at

plaintiff's restaurants. On information and belief, defendant Tourondel is planning to open multiple additional restaurants.

2.      In 2004, defendant Tourondel, a "celebrity chef" with no prior restaurant ownership experience, was given the opportunity to associate his name with a line of premier restaurants, first as an employee and then as a member of BLT Restaurant. BLT Restaurant owns and operates several high-profile restaurants in New York and across the country, while managing other restaurants in the U.S. and abroad under the BLT banner.

3.      On or about February 28, 2010, Tourondel parted ways with BLT Restaurant. Defendant Tourondel and his new business partner, defendant Cinque, subsequently announced that they would be opening a restaurant in Sag Harbor, New York. Their new venture, "LT Burger," has been improperly created, operated and marketed through the use of BLT Restaurant's confidential and proprietary information. In particular, Tourondel copied substantial and key portions of the menu of plaintiff's BLT Burger restaurants in their entirety. This information, including the menu contents and underlying recipes, constitute confidential and proprietary material that Tourondel is prohibited from using after his departure from BLT Restaurant. Furthermore, BLT Burger's menu constitutes an unregistered trademark which the defendants have infringed by cutting and pasting both menu concepts and meal names for use in their own business. BLT Restaurant seeks damages, disgorgement of profits, a permanent injunction, a declaration that Tourondel may not use its proprietary and confidential information and attorney's fees.

JURISDICTION AND VENUE

4.      This Court has jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1125(a) and 28 U.S.C. § 1367.

5.     This Court has personal jurisdiction over defendants because they are residents of New York State; are transacting business within the State of New York; and have committed, and continue to commit, tortious acts of trademark infringement in New York.  In addition, defendant Tourondel has contractually consented to jurisdiction in this Court.

6.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and because the contract at issue in the First Cause of Action contains a choice of venue provision requiring actions for breach to be brought only in this Court or the Supreme Court of New York State, New York County.

PARTIES

7.     Plaintiff is a limited liability company duly organized and existing under the laws of the state of New York and having its principal place of business at 950 Third Avenue, New York, New York 10022.

8.     Defendant Laurent Tourondel is an individual who resides, on information and belief, at 309 East 108th Street, New York, New York.

9.     Defendant Michael Cinque is the proprietor of Amagansett Wine & Spirits in Amagansett, New York and, on information and belief, maintains a residence in East Hampton, New York.

10.     Defendant LT Burger, Inc. is an entity organized under the laws of the State of New York having a principal place of business at 62 Main Street, Sag Harbor, New York.  On information and belief, LT Burger, Inc. is co-owned by defendants Tourondel and Cinque.

## FACTUAL ALLEGATIONS

### Tourondel Promises Never to Use Plaintiff's Confidential Information and Proprietary Materials for His Personal Benefit

11.     Plaintiff BLT Restaurant is governed by a Limited Liability Company Agreement (the "Operating Agreement") dated January 1, 2005. Defendant Laurent Tourondel was an original signatory to the BLT Operating Agreement.

12.     The BLT Operating Agreement was amended three times: on March 20, 2006, July 1, 2006, and January 1, 2007. Tourondel signed each of the amendments.

13.     Under the Operating Agreement, Tourondel was defined as an "Employee Member" of BLT Restaurant with specific obligations and a salary that increased with the achievement of certain milestones for the company. Plaintiff has performed its obligations under the Operating Agreement, including by payment of salary to Tourondel during his membership in BLT Restaurant.

14.     As an Employee Member, Tourondel was also defined as a "Restricted Person," subject to detailed and broad provisions addressing his fidelity to BLT Restaurant and his obligation not to disclose confidential or proprietary information. These obligations explicitly survive Tourondel's separation from BLT Restaurant.

15.     Under the Operating Agreement, "Confidential Information" includes but is not limited to:

> (i) **business plans, operating plans, marketing plans**, bid strategies, bid proposals, financial reports, operating data, budgets, wage and salary rates, **pricing strategies and information**, terms of agreements with suppliers or customers and others, customer lists, **formulas**, patents, devices, software programs, reports, correspondence, tapes, discs, tangible property and specifications owned by or used in the Companies businesses, operating strengths and weaknesses of the Companies' Members, shareholders, officers, directors, employees, agents, suppliers and customers, and/or (ii) information pertaining to future developments such as, but not limited to, research and development, **future marketing, distribution, delivery or merchandising plans or ideas**, and potential new

4

distribution or business locations, and (iii) other tangible and **intangible property**, which is used in the business and operations of the Companies, but not made publicly available.

Operating Agreement, § 8.11(a) (emphasis added).

16.    "Proprietary Materials" under the Operating Agreement include:

> All discoveries made, inventions created, and **all ideas, concepts, designs, formulas, proposals, projects, processes, systems, techniques**, and improvements of whatever kind related to the Company's business, products or research and development, whether or not patentable or registrable under copyright or similar laws, conceived or developed by the Restricted Person directly or indirectly, alone or jointly with others[.]

Operating Agreement, § 8.11(b)(ii) (emphasis added).  Furthermore, "all original works of authorship which are made by [a Restricted Person] (solely or jointly with others) within the scope of and during the period of his holding Membership Interests in the Company and which are protectable by copyright are 'works made for hire,' as that term is defined in the US Copyright Act." *Id.*

17.    The Operating Agreement makes clear that such Proprietary Materials remain the sole and exclusive property of BLT Restaurant.  Operating Agreement, § 8.11(b)(ii).

18.    Tourondel's recipes and the assembly of a variety of dishes into a menu of offerings constitute "concepts, designs [and] formulas" within the meaning of the Operating Agreement.

19.    Tourondel warranted that he brought with him to BLT Restaurant no "inventions, original works of authorship, developments, improvements, or trade secrets" that related to the "business, products or services" of BLT Restaurant.  Operating Agreement, § 8.11(b)(i).  In other words, among other things, Tourondel can claim no pre-existing rights to recipes used at the BLT restaurants.

5

20.     Under the Operating Agreement, Tourondel was jointly responsible, along with another BLT Restaurant principal, for developing "the décor, menu, and publicity" for BLT restaurants.  Operating Agreement, § 8.2.  These elements, as developed by and for BLT Restaurant, are based upon Confidential Information and themselves constitute Proprietary Materials of BLT Restaurant under the Operating Agreement, protected from post-separation exploitation by defendant Tourondel.

21.     Tourondel was required to turn over all confidential and proprietary information to BLT Restaurant upon termination of his relationship with BLT Restaurant.  Operating Agreement, §§ 8.11(b)(iv) and 8.11(e).

22.     Tourondel is prohibited from directly or indirectly disclosing, using or making known for his own or another's benefit "any Confidential information" and from using such information "in any way except in the best interests" of BLT Restaurant.  Operating Agreement, § 8.11(c).  This obligation survives Tourondel's departure from BLT Restaurant.  Operating Agreement, § 8.11(d).

### BLT Restaurant's Business Success

23.     Between 2004 and 2009, BLT Restaurant opened 18 restaurants, beginning with BLT Steak in New York, New York, plaintiff's unique interpretation of the American Steakhouse.  BLT Steak was wildly successful and met with significant critical acclaim.

24.     Through careful branding, management and promotion, plaintiff was soon able to open several additional BLT Steak restaurants across the United States.  Some restaurants were owned by BLT Restaurant while others were managed facilities, in the U.S. and abroad, including highly-coveted high-end hotel-based restaurants.  The BLT Restaurant experience,

reproduced with equal effect at each location, achieved a rare fusion of fine dining without excessive formality.

25.     Plaintiff also expanded beyond steakhouses while maintaining the same high-quality, unpretentious dining experience. Thus, plaintiff founded BLT Fish, BLT Prime (an expansion on the BLT Steak concept), and BLT Market. All met with critical success.

26.     On or about October 25, 2006, plaintiff introduced its dining experience concept to a new market sector with a unique approach to more casual food at BLT Burger in New York. A second BLT Burger was opened at the Mirage Hotel & Casino in Las Vegas on or about July 1, 2008 ("BLT Burger LV"). A BLT Burger opened in Hong Kong on or about September 26, 2009 ("BLT Burger HK"). By its very name, BLT Burger ensured that the dining public would be confident that the same quality and experience for which the other BLT restaurants had become renowned would be present at BLT Burger.

27.     The dining experience at BLT Burger is built around a unique menu (the "BLT Burger Menu") which blends traditional hamburgers with fare not typically found in a "burger joint" (such as falafel and lamb) alongside not only carefully paired beers and intriguing side orders, but a line of distinctive milkshakes, including alcoholic offerings. On information and belief, BLT Burger was one of the very first dining establishments to offer alcoholic milkshakes.

28.     At each of the three BLT Burger locations the core Menu is the same, with slight variations based on local preferences. Items that are on the permanent menu at one are often featured as specials at the others. The standard menu for each of the three BLT Burger locations is available from BLT Burger's website. The BLT Burger New York, Las Vegas and Hong Kong menus are attached hereto as Exhibits A-C.[1]

---

[1] *See* www.bltburger.com. Exhibits A-C were printed on August 31, 2010.

29.     The development of the BLT Burger Menu involved a substantial investment of
time and effort in order to successfully translate the customer service, ambience and food quality
of the upscale BLT restaurants to this new market segment. This developmental work included,
but was not limited to, careful attention to ingredients, the blend of menu offerings, and
appropriate price points.

30.     Thanks to plaintiff's hard work and close attention to consistently high quality
and a reliably positive dining experience, BLT Burger received rave reviews. In 2007, *TimeOut
New York* declared BLT Burger the "best new burger joint;" *New York* magazine voted BLT
Burger as "one of the 10 best hamburgers in New York;" the Heinz Company pronounced BLT
Burger the "best dressed burger;" and *TimeOut New York Kids* claimed that BLT Burger offered
the "best turkey burger." Meanwhile, the *Onion* found BLT Burger to offer the "best boozy
milkshake."

### Tourondel Leaves BLT Restaurant and Uses Plaintiff's
### Confidential and Proprietary Information
### For His Own Benefit

31.     By 2010, defendant Tourondel was increasingly at odds with the other members
of BLT Restaurant. Ultimately, Tourondel ceased to be a member of BLT Restaurant on or
about February 28, 2010. In violation of his contractual obligations to BLT Restaurant,
Tourondel thereafter leeched off of plaintiff's outstanding reputation and successful marketing
by opening a hamburger restaurant using plaintiff's proprietary and confidential information.

32.     On or about July 4, 2010, Tourondel and Cinque – operating, on information and
belief, as defendant LTB – opened "LT Burger," an eatery in Sag Harbor, New York. The menu
at LT Burger is available on that restaurant's website and is attached hereto as Exhibit D.[2]

---

[2] *See* www.ltburger.com. Exhibit D was printed on August 31, 2010.

33.    The defendants copied core elements of the BLT Burger Menu almost exactly at LT Burger. For example:

(a)    BLT Burger's basic hamburger is called the "Classic" and sells for $9; LT Burger's menu begins with the "Classic Hamburger" for $9.

(b)    BLT Burger offers a specialty burger with extra-high quality beef called the "American Kobe (Snake River Farm American Wagyu Beef)" for $16; LT Burger sells the "Snake River Farm American Kobe" burger for $16. As reflected in the names, both restaurants source the beef for these burgers from the same specialty farm in Idaho.[3]

(c)    BLT Burger offers a meal called "The Stripper," which is a hamburger topped with lettuce, tomato, onion, bell pepper and avocado, but no bun, for $12; LT Burger's imitation of the Stripper is called the "Skinny Dip Burger" which is topped with bell pepper, avocado, and lettuce, but no bun, and sells for $12.

(d)    Both restaurants offer turkey burgers "with fresh herbs" and "Veggie Falafel" on their burger menus.

(e)    The BLT Burger Menu offers three "Combos:" (1) a classic burger, fries and soda for $15; (2) a classic burger, fries, and a milkshake for $17; and (3) a classic burger, fries, and a draft beer for $18. LT Burger's menu features three "Deluxe Combos;" (1) a classic burger, fries and soda for $14; (2) a classic burger, fries, and a milkshake for $17; and (3) a classic burger, fries and a draft beer for $18.

34.    Furthermore, the BLT Burger Menu describes the meat content of its burgers as "a combination of sirloin, short rib, chuck and brisket." LT Burger says that its burgers are "a combination of sirloin, short rib, chuck and brisket." Both restaurants offer the same six optional

---

[3] *See* www.snakeriverfarms.com

toppings for $1.50 each, including such non-standard items as egg and avocado, plus five identical cheeses for $1 each. The fries and side orders are essentially identical on both menus.

35.   LT Burger's duplication extends to BLT Burger's signature milkshakes, most of which are lifted directly from the BLT Burger Menu. Specifically:

(a)   BLT Burger has long offered the "Twinkie Boy;" now LT Burger offers the "Twinkie," listing the same three ingredients: vanilla ice cream, Twinkies and caramel syrup.

(b)   BLT Burger offers a milkshake called "The Lunch Box (vanilla, peanut butter, grape jelly);" LT Burger's menu features the "PB&J (vanilla, peanut butter, grape jelly)."

(c)   BLT Burger sells the "Black and White" (called the "Yin & Yang" at LT Burger HK); LT Burger sells the same thing as the "Black & White Swirl."

(d)   BLT Burger offers the "Mocha Mudslide," which LT Burger calls the "Oreo Crunch." Both contain coffee ice cream, Oreo cookies, and chocolate syrup.

(e)   BLT Burger has the "Rocky Road," containing chocolate ice cream, chocolate brownie, and almonds; LT Burger sells the same thing and calls it "The 114."

(f)   BLT Burger LV and HK both offer the "Berry Me," a milkshake containing "strawberry ice cream and mixed fresh berries;" LT Burger has the "Berry Good," with "strawberry ice cream and mixed fresh berries."

(g)   BLT Burger LV and HK also both offer "Campfire Marshmallows," with vanilla ice cream and toasted marshmallows; LT Burger offers the same thing under the name "the Fluffer."

(h)   BLT Burger LV features the "Nut Job," a combination of hazelnut ice cream, Nutella, and slivered almonds; LT Burger has the "Crazy Nut," with hazelnut ice cream, Nutella, and almonds.

10

(i)     Finally, BLT Burger LV sells the "Creamsicle" with orange sherbert and vanilla ice cream; LT Burger sells the same product as its "Dreamsicle."

36.     Tourondel also lifted not only BLT Burger's alcoholic shake concept but even specific formulas for its "Rated 'R' Milkshakes:"

(a)     BLT Burger offers "Grandma's Treat," a combination of Maker's mark, caramel and vanilla ice cream; a patron at LT Burger can buy a milkshake made of Maker's mark, caramel and vanilla ice cream, renamed the "Daisy Dukes."

(b)     BLT Burger HK and LV sell the "Malibu Barbie," containing rum, pineapple juice, coconut milk and vanilla ice cream; LT Burger sells a "Shelter Island," with ingredients listed as "rum, pineapple-coconut, [and] vanilla ice cream."

(c)     BLT Burger LV offers "Fuzzy the Bear," with peach schnapps, peaches and vanilla ice cream; LT Burger sells the same thing called the "Red Head."

(d)     LT Burger's "Brunette" is almost identical to BLT Burger's "Night Rider" (called the "Oreo Express" at BLT Burger HK). The Night Rider uses kahlua, whereas the Brunette uses amaretto; the remaining ingredients are identical.

37.     All of LT Burger's copycat milkshakes, alcoholic and non-alcoholic, are sold for the same price as at BLT Burger's domestic locations.

38.     On information and belief, based upon the description of the food's contents and the duplication of the BLT Burger Menu, the defendants are using the same proprietary recipes at LT Burger as are used at BLT Burger. This is also reflected in LT Burger's repetition of BLT Burger's pricing structure which is also based upon confidential business analysis as well as the selection of specific ingredients and suppliers.

**LT Burger's Menu Violates Plaintiff's Trademark BLT Burger Menu**

39.    The BLT Burger Menu is a distinctive and original combination of products that was developed as, and remains, a unique matrix of meal options associated specifically with the food and service quality and price points of BLT Burger. Accordingly, the BLT Burger Menu merits protection as an unregistered trademark of BLT Restaurant.

40.    Therefore, LT Burger's menu is not only based upon BLT Restaurant's confidential and proprietary information, but also constitutes a violation of that trademark.

41.    The misappropriation of the BLT Burger Menu for the LT Burger menu creates the false impression, in the mind of consumers, that LT Burger is sponsored by, endorsed or somehow affiliated with the BLT restaurants.

42.    LT Burger's duplication of the BLT Burger Menu and likely duplication of the recipes for those products, is likely to confuse, mistake or deceive the consuming public who will reasonably assume that these products originate with the same source: BLT Burger's well-established quality kitchens.

43.    Consumers confronted with the LT Burger menu will recognize the menu as indicative of a BLT restaurant and will expect a BLT experience, to the detriment of plaintiff and the consuming public.

44.    The Defendants have been unjustly enriched by their misappropriation and use of the BLT Burger Menu and the associated goodwill and reputation carefully cultivated by plaintiff at great effort and expense.  Notably, publicly available consumer reviews of LT Burger have been distinctly negative, especially concerning the level of service provided, such that BLT Restaurant's reputation is likely to be harmed by the defendants' misconduct.

**Tourondel Uses Plaintiff's Marketing Techniques to Promote Himself
and His Other Restaurant Interests**

45.     Shortly before opening LT Burger, defendant Tourondel promoted himself and
the about-to-open new restaurant by stealing an element of plaintiff's own marketing strategy.
Specifically, since 2006, BLT Restaurant has distributed a small twice- yearly promotional
magazine entitled "BLT living," circulated through the various BLT restaurants around the
globe. "BLT living" includes short articles, for example about specific foods or chefs; selected
recipes; and complementary advertising. In the most recent (fall 2009) issue, readers received a
chart showing recommended burger, milkshake and beer pairings from the BLT Burger Menu.
A copy of the cover of that issue of "BLT living" is attached hereto as Exhibit E.

46.     In 2010, defendant Tourondel distributed a magazine entitled "LT living,"
published by the same company used by plaintiff. Although the "BLT" and "LT" are in different
fonts, the word "living" on the cover is identical in size and style on both magazines. The layout
of the cover of "LT living" is essentially identical to that of "BLT living." The layout of the
final page of "BLT living" contains three sections: "HauteNotes," a section provided by the
publisher; "BLT Publications and BLT Locations;" and the publisher's masthead. The layout of
the final page of "LT living" contains three sections: "HauteNotes;" "Laurent Tourondel
Publications;" and the masthead, all located in the same relationship to each other as in BLT
living. For both publications, the publisher's masthead lists exactly the same persons as
publisher, editor-in-chief, design director, managing editor, assistant editor, copy editor,
contributing writers and marketing director. The advertisement on the inside back cover of the
fall 2009 BLT living appears on the inside front cover of LT living. A copy of the cover of "LT
living" is attached hereto as Exhibit F.

47.      Demonstrating his intent to confuse consumers and associate his new venture with plaintiff's existing restaurants, Defendant Tourondel distributed copies of "LT living" directly to the existing BLT restaurants around the world – exactly the same channel of distribution used for "BLT living."

48.      The content of "LT living" is focused on a New York restaurant called "Brasserie Ruhlmann," with which Tourondel had been affiliated, with the permission of plaintiff, since 2006. BLT Restaurant, however, received no benefit from Tourondel's involvement with Brasserie Ruhlmann such that distributing a magazine promoting that restaurant to customers at BLT Restaurant's locations benefitted Tourondel, but not BLT Restaurant.

49.      "LT living" contains an announcement that LT Burger will soon be opening.

50.      Despite the fact that "LT living" purely promotes Tourondel's business ventures and has nothing to do with BLT Restaurant, Tourondel deceived the managers of BLT Restaurant's locations into paying for the delivery of these magazines to their restaurants. Specifically, on or about July 9, 2010, Tourondel's assistant, Lisa Tatelbaum, sent an e-mail to the various BLT restaurants stating:

> The new issue of LT Living is printed and I have 2 cases I would like to send to each restaurant. Please send me your fedex or ups number so that I can ship them out to you. I hope to do this on Monday so please make sure your account information is sent to me by then. Thanks!

By reference to a "new" issue of "LT Living," Tourondel's agent wrongly suggested that "LT Living" was merely a continuation of "BLT Living."

51.      Tatelbaum sent a follow-up e-mail on or about July 13, 2010 to five restaurant managers who had not yet provided their overnight shipping codes. Ultimately, on information and belief, all but one of the restaurants provided such account numbers, thus Tourondel added

insult to injury by charging the shipping of his copy-cat promotional magazine to the plaintiff's restaurants (or their hotel hosts) rather than paying for it himself.

52.     Tourondel's unlawful use of the confidential and proprietary information of BLT Restaurant and his promotion of himself and his new venture to existing BLT Restaurant customers reflect Tourondel's intent to siphon business from plaintiff's restaurants by misdirecting its clientele to his new establishment which, based on Tourondel's public comments, is the first of many to come. Tourondel and his partners should not be permitted to build their new business ventures upon misappropriated confidential and proprietary information and plaintiff's trademark menu.

### First Cause of Action

#### BREACH OF CONTRACT
(against Tourondel)

53.     Plaintiff repeats and reallages paragraphs 1 through 52 as though fully set forth herein.

54.     The Operating Agreement, as amended, is a valid and enforceable contract.

55.     BLT Restaurant has fully performed its obligations under the contract.

56.     Defendant Tourondel used BLT Restaurant's proprietary and confidential information in the creation, operation and promotion of LT Burger in violation of the Operating Agreement.

57.     The proprietary and confidential information used by Tournondel in breach of the contract includes the development of the full BLT Burger Menu; on information and belief, use of BLT Restaurant's proprietary recipes; and the promotion of himself and LT Burger through the magazine "LT living," an obvious knock-off of "BLT living."

58.     Plaintiff has been damaged as a result of Tourondel's theft and improper use of plaintiff's proprietary and confidential information for his own profit.

## Second Cause of Action

### FEDERAL UNFAIR COMPETITION
(against all defendants)

59.     Plaintiff realleges paragraphs 1 through 58, as though fully set forth herein.

60.     The collective contents of the BLT Burger Menu constitute a trademark within the meaning of 15 U.S.C. 1125(a).

61.     Defendant Tourondel, who, on information and belief was chiefly responsible for development of the menu at LT Burger, was responsible for helping to develop the trademark BLT Burger Menu and so was on notice of the unique and protected nature of the BLT Burger Menu.

62.     The defendant's use of a menu at LT Burger that is nearly identical to BLT Burger's menu creates a false designation of origin or false representation, has misappropriated a valuable property right and the goodwill of plaintiff, and has attempted to falsely create the impression, in the mind of consumers, that LT Burger is associated or affiliated with plaintiff, or that LT Burger is sponsored or endorsed by plaintiff, in an attempt to induce customers to patronize LT Burger.

63.     LT Burger's use of a false designation of origin or false representation causes and is likely to cause confusion, mistake or deception of the public to capitalize on the favorable commercial impression created by plaintiff and the association with the success of plaintiff's BLT restaurants.

64.     Defendants have been unjustly enriched by misappropriating and trading on the goodwill and reputation earned and developed by plaintiff at great effort and expense.

65.     Defendants unlawful conduct, including as described above, was deliberate, knowing and in willful disregard of plaintiff's property rights.

66.     Defendants' conduct, including as described above, constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. 1125.

67.     Plaintiff has been damaged by defendants' acts in an amount to be determined at trial, and if defendants' conduct is allowed to continue, plaintiff and its goodwill and reputation will continue to suffer immediate, substantial and irreparable injury that cannot be adequately calculated and compensated in monetary damages.

### Third Cause of Action

DECEPTIVE ACTS AND PRACTICES IN VIOLATION OF N.Y.GEN.BUS. LAW § 349
(against all defendants)

68.     Plaintiff realleges paragraphs 1 through 67, as though fully set forth herein.

69.     Defendants' use of the BLT Burger Menu and BLT Restaurant's promotional models are deceptive and materially misleading in that they tend to falsely describe or represent the defendants' LT Burger restaurant as sponsored, endorsed or otherwise approved by BLT Restaurant, or as affiliated with BLT Restaurant, which in fact it is not.

70.     On information and belief, defendants' unlawful conduct was deliberate, knowing and in willful disregard of BLT Restaurant's proprietary rights.

71.     Defendants' conduct was directed at consumers in the State of New York, including those quite likely to be familiar with BLT Burger.

72.     Unless defendants are enjoined from using the BLT Burger Menu and the BLT Restaurant promotional model, the public is likely to be misled as to the origin of defendants' goods and services, and plaintiff will continue to suffer irreparable injury which cannot be adequately calculated or compensated solely by money damages.

17

## Fourth Cause of Action

DECLARATORY JUDGMENT
(against Tourondel)

73.     Plaintiff realleges paragraphs 1 through 72, as though fully set forth herein.

74.     A justiciable controversy exists between BLT Restaurant and Tourondel.

75.     The Operating Agreement sets forth categories of information designated as

confidential and proprietary.

76.     Tourondel is a signatory to the Operating Agreement.

77.     The Operating Agreement prohibits Tourondel from using BLT Restaurant's

proprietary and confidential information for the benefit of anyone other than BLT Restaurant.

78.     Plaintiff is entitled to a declaration that Tourondel may not use BLT Restaurant's

proprietary and confidential information, including but not limited to its recipes, menus and

marketing materials, in connection with any restaurant he may open.

## Fifth Cause of Action

For Payment of Attorney Fees and Costs
(against Tourondel)

79.     Plaintiff reallages paragraphs 1 through 78, as though fully set forth herein.

80.     Section 19.7 of the Operating Agreement provides:

> If the Company or any holder of Membership Interests retains counsel for the
> purpose of enforcing or preventing the breach or any threatened breach of any
> provision of this Agreement or for any other remedy relating to it, then the
> prevailing party will be entitled to be reimbursed by the nonprevailing party for
> all costs and expenses so incurred (including reasonable attorneys' fees, costs of
> bonds, and fees and expenses for expert witnesses).

80.     As described herein, defendant Tourondel has breached the Operating Agreement

by improperly using BLT Restaurant's Confidential Information and Proprietary Materials.

18

81.     Therefore, pursuant to the parties contractual agreement as set forth in section 19.7, plaintiff is entitled to an award of its reasonable attorneys' fees and costs in prosecuting this action.

WHEREFORE, BLT Restaurant requests that the Court enter judgment in its favor and against the Defendants, as follows:

(i)     On the first cause of action, damages in an amount to be determined at trial;

(ii)    On the second cause of action, damages in an amount to be determined at trial, disgorgement of profits, and a permanent injunction preventing the defendants from infringing the BLT Burger Menu;

(iii)   On the third cause of action, damages in an amount to be determined at trial, plus attorney's fees as permitted by law;

(iv)    On the fourth cause of action, a declaratory judgment that the defendants may not use plaintiff's proprietary and confidential information at LT Burger, planned future restaurants, or for any other purpose;

(v)     On the fifth cause of action, its reasonable attorneys' fees, costs and expenses as provided by the parties' contract; and

(vi)    For such further relief as the court deems just and proper, including such relief as will prevent the public from being misled, deceived or confused.

JURY DEMAND

Plaintiff demands a trial by jury.

Dated: New York, New York
       August 31, 2010

WACHTEL & MASYR, LLP

William B. Wachtel (WW 4991)
Julian D. Schreibman (JS 1124)
1 Dag Hammarskjold Plaza
885 Second Avenue
New York, New York 10017
(212) 909-9500
Fax (212) 909-9417
wachtel@wmllp.com
jschreibman@wmllp.com

*Attorneys for Plaintiff*